JOHN W. STEVENSON

v.

ANN MORRISSEY.

*Forcible Entry and Detainer—Possession—Evidence—Instructions.*

1. In an action of forcible entry and detainer, upon a review of the evidence, it is *held:* That the defendant was never out of possession; that the plaintiff never had such actual and peaceable possession as would give him a right of action under the statute; and that there was no material error in giving and refusing instructions.

2. It is proper to refuse an instruction which is in substance and form substantially identical with instructions given.

[Opinion filed January 15, 1887.]

In error to the Circuit Court of Lee County· the Hon. William Brown, Judge, presiding.

Mr. David L. Hough, for plaintiff in error.

Messrs. W. & W. D. Barge and Richolson & Gentleman, for defendant in error.

It is incumbent upon the plaintiff to show that he had actual possession of the premises.   A mere constructive entry is not sufficient.   McCartney v. McMullen, 38 Ill. 237; Thompson v. Stornberger, 54 Ill. 326; Spurck v. Forsyth, 40 Ill. 438; Mann v. Brady, 67 Ill. 95.

His possession must be excessive.   Jamison v. Graham, 67 Ill. 94.

Neither plaintiff nor Hough had exclusive possession as long as defendant and her family were there.   If any of her property was there, then there was no exclusive possession against her.   Stevenson says there were some of her things in the house on Monday when he went there.   This was enough to give her possession of the premises.

The plaintiff must show a right to the present possession. Nicholson v. Walker, 4 Ill. App. 404.

This he did not do.   He had, therefore, no right of action.

Baker, P. J.   This was forcible entry and detainer by John W. Stevenson, plaintiff in error, against Ann Morrissey, defendant in error, for the purpose of recovering the possession of a certain house and premises in the town of Peru, in La Salle County.   The suit has been pending in the courts for many years, and was taken to the Circuit Court of Lee County by change of venue and a jury trial there resulted in a verdict and judgment for defendant in error.

Defendant in error was married to one Pat Conley in 1852, and they at once moved on the premises and occupied the house in question as a home, and they continued living there with their family for a number of years and until Conley died,

leaving her and the children in possession. She afterward intermarried with William Morrissey, and they, with her children, occupied the place as a residence down to and on Saturday the 23d of August, 1873. Morrissey, the husband, was working on the canal during said month of August, and on the day mentioned and for some time thereafter was absent from home. About noon of that Saturday, D. L. Hough and one Keys came to the house and found defendant therein with her two children. They at once proceeded to remove from the house and premises and place upon the public highway the household goods and furniture of defendant in error, consisting of stoves, beds, bed ticks, chairs, a barrel of flour, a barrel of salt, hams, butter and numerous other articles. After doing this they forcibly ejected defendant in error and her children from their domicile, nailed and fastened the door with a cleat and board, and then left the place. It does not appear from the evidence that either Hough or Keys had in his hands any writ or legal process authorizing these acts, and no attempt or offer was made upon the trial to show they had any authority whatever for their high-handed proceedings.

As soon as these trespassers had departed, defendant in error and her children effected an entrance into their house and opened the door; Mrs. Morrissey and her daughter, who was about thirteen years of age at the time of the occurrence, both testify that supper and the meals for two subsequent days were cooked at a fire made outside of the door, the stoves all having been moved into the street and to a considerable distance; that their meals were eaten inside the house, and that on Saturday, Sunday and Monday nights they slept in the house on a straw tick they got down out of the garret. Their statements are, in part, corroborated by Hough, who testifies he went there late Sunday afternoon and again on Monday morning and that both times he found the door unfastened and on each of these occasions nailed and fastened it as he had done on Saturday. He also states nothing was left in the house but some refuse stuff in the garret, and he probably includes the straw tick in this refuse stuff. It appears that on both of these occasions

when he was back there the defendant in error was absent; on Sunday she was at church and on Monday morning she was at Ottawa for the purpose of consulting a lawyer. He did not at either time find the two children in the house, but McHale, who was there at the same time on Sunday, testifies he saw them both on the premises. The evidence of the daughter, Ellen Conley, is also to the purport she and her little brother were on the premises on these several occasions; but the children, in the absence of their mother, seemed to have avoided meeting Hough. The cow and pig of defendant in error were also upon the place.

On Monday, August 25th, an arrangement was made between Hough and John W. Stevenson, the plaintiff in error, whereby the latter was to have the use of the house and premises as tenant of the former until the first day of May following, and as compensation therefor was to keep possession for Hough and fix up and repair the house, and about three o'clock that afternoon plaintiff in error took to the place, in a light one-horse wagon, a stove, chair, pail and broom, to be used in cleaning, and some glass and putty for repairing the windows, and put them in the building. The children of defendant in error were upon the place, but Ellen, the eldest, ran off to her aunt's in search of her mother, who had not yet returned home from her trip to Ottawa. An hour or more thereafter defendant in error returned to the house with her children and her mother-in-law, an old woman eighty years of age, and found plaintiff in error tearing the paper off the walls. The latter testifies, there were some things there when he went, and that when defendant in error got there she claimed the property and shook her fists at him and threatened him with a shovel; that he at first told her he had rented and proposed to stay there, but afterward said to her if the property was hers he didn't want it, or to get into a law suit, and wouldn't have any law; that he remained there about an hour, during which the family put his stove and things out of the house, and then left, but did not go away willingly. The testimony for defendant in error is somewhat different from this, and is to the effect she did not threaten him

with a shovel; that when she told him the property was hers he said all right, please keep still and he would go away, and that she told him he had better get out, and he sat down in a chair and smoked with the old lady until the rain was over, when he picked up the putty and glass and put them in his pail and walked off. The family remained in the house that Monday night, and the next day a man was hired and the furniture and property in the street were brought back; and defendant in error has continued to reside upon the premises from that time hitherto. There is some conflict in the testimony in respect to a few of the facts above mentioned, but we do not deem these conflicts material to the decision of the case, and we find the facts to be substantially as stated.

It is clear that defendant in error never was out of possession of the dwelling-house and land. At the time of the unlawful raid made upon her she had been in the quiet and peaceable occupancy of the premises as a home for more than twenty-one years. She and her family were temporarily ejected by force from her domicile, and most of her household goods and chattels were by the tort-feasors thrown into the public highway. But she never abandoned or yielded up the premises or succumbed to the force that was imposed. She resisted continuously, as she had an undoubted right to do in defense of her castle, to the best of her ability, and all the while asserted and maintained her possession. Immediately upon the departure of Hough and Keys on Saturday afternoon the family re-entered the house. During all the nights involved in the *res gestæ* of the transaction she and her children slept there, and during the days they ate their meals there, and all or some of the family were continuously within its four walls, except when for a very short time on Sunday and for a few hours on Monday, and in the temporary and necessary absence of the mother from home, her minor children, probably actuated by fear, sought refuge upon the approach of Hough or plaintiff in error, in the stable or cornfield upon the premises. It matters not that they made their bed upon an old straw tick or even upon the bare floor, or that they had no table upon which to eat their meals. Be-

Stevenson v. Morrissey.

sides this, defendant in error uninterruptedly had upon the place her cow, pig, straw tick and certain refuse stuff.

It is also clear plaintiff in error never had such actual and peaceable possession as would give him the right to an action under the statute of forcible entry and detainer. When Mrs. Morrissey started for Ottawa about 5 o'clock Monday morning, for the purpose of procuring legal assistance in protecting herself against the invasions of her rights, she left her children quietly asleep in the house; and when she returned home that afternoon from Ottawa she found plaintiff in error trespassing upon her possession, and she was fully authorized to do all she did do in order to protect her property and maintain her possession. Even plaintiff in error states he found some things there when he went, and he expressly declines to testify the children were not there, and the evidence otherwise shows clearly they were. The circumstances exclude any conclusion that the parties to this controversy were both in possession as joint tenants or tenants in common, and the evidence utterly fails to show an exclusive possession by plaintiff in error. Jamison v. Graham, 57 Ill. 94. If the claim made by plaintiff in this suit was held good, no one would be safe in the possession of his domicile.

Even if the possession of plaintiff on the afternoon of Monday was admitted, we would have no hesitation in holding under the facts of the case, the occurrences that transpired and the language that was used, that he voluntarily abandoned the house and surrendered it into the possession of defendant in error, and this notwithstanding his statement on re-direct examination that he did not go away willingly.

Objections are urged to the rulings of the court upon two of the instructions—the seventh of those submitted by plaintiff in error, and the third of those asked by defendant in error. It was not error to refuse the seventh, and for the reason it was identical in substance and almost identical in form and phraseology with the eighth instruction, and that was given; and moreover the legal principle upon which it was based was also contained in the first, second, fourth and fifth given instructions. Nor was it error to give said instruction as it

was modified by the court, for as so modified it stated good law.

It was not manifest error to give said third instruction. The two legal propositions contained therein were correct statements of the law ; a peaceable possession by plaintiff of the premises in controversy, was a condition precedent to the right of recovery under clause one of the second section of the Forcible Entry and Detainer Act; and said section by its very terms only gives the remedy therein provided to the person entitled to the possession. The instruction might probably be held erroneous in some cases arising under the first clause of the section for a forcible entry, on account of the force in which these two legal propositions were stated, and on the ground its tendency, in the form given, would be to mislead the jury, by inducing them to believe that a peaceable possession did not of itself give a right of recovery under the statute; without other proof the plaintiff was entitled to the possession; but, as applied to the case at bar, the instruction could have had no effect to mislead.

We think the evidence that was objected to on the trial was admissible for the purpose of showing that defendant in error was, and the plaintiff in error was not, in the actual, peaceable and exclusive possession of the premises in question.

In our opinion the verdict and judgment are right and just and the judgment is affirmed.

*Affirmed.*